1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

LOANNE KIM CHUC TRAN,                              NO.  C12-5675-RSL-JPD

9

                    Plaintiff,

10

       v.                                                    REPORT AND
                                          RECOMMENDATION

11

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,[1]

12

                    Defendant.

13

14

       Plaintiff Loanne Kim Chuc Tran appeals the final decision of the Commissioner of the

15

Social Security Administration ("Commissioner") which denied her applications for Disability

16

Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI

17

of the Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83f, after a hearing before an

18

administrative law judge ("ALJ").  For the reasons set forth below, the Court recommends that

19

the Commissioner's decision be reversed and remanded for further administrative proceedings.

20

                    I.        FACTS AND PROCEDURAL HISTORY

21

       Plaintiff is a 41-year-old woman with a high-school education.  Administrative Record

22

23

24

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security.  Therefore, pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is substituted for Commissioner Michael J. Astrue as the defendant in this suit.  **The Clerk of Court is directed to update the docket accordingly, and the parties are ordered to update the caption on all future filings with the Court.**

("AR") at 178, 189.  Her past work experience includes employment as a cashier, day camp leader, interpreter, maintenance assistant, nursing assistant, factory worker, and secretary assistant.  AR at 184.  Plaintiff was last gainfully employed in 2002.  AR at 184.

On July 10, 2009, she filed applications for SSI and DIB, alleging an onset date of August 11, 2008.  AR at 167-68.[2]  Plaintiff asserts that she is disabled due to heart failure, lung problems, restless leg syndrome, and asthma.  AR at 183, 213.

The Commissioner denied Plaintiff's claim initially and on reconsideration.  AR at 83-89, 92-96.  Plaintiff requested a hearing, which took place on March 21, 2011.  AR at 25-78.  On June 22, 2011, the ALJ issued a decision finding Plaintiff not disabled and denied benefits based on his finding that Plaintiff could perform a specific job existing in significant numbers in the national economy.  AR at 13-20.  Plaintiff's administrative appeal of the ALJ's decision was denied by the Appeals Council, AR at 1-6, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g).  On July 30, 2012, Plaintiff timely filed the present action challenging the Commissioner's decision.  Dkt. 1, 3.

## II.     JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III.     STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005).  "Substantial evidence" is more than a scintilla, less than a preponderance, and is

---

[2] A separate SSI application is not in the administrative record; the record reflects that Plaintiff filed a concurrent SSI/DIB claim.  *See, e.g.*, AR at 80.

REPORT AND RECOMMENDATION - 2

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld.  *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)).  The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## IV.    EVALUATING DISABILITY

As the claimant, Ms. Tran bears the burden of proving that she is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted).  The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months.  42 U.S.C. §§

423(d)(1)(A), 1382c(a)(3)(A).  A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the national economy.  42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The claimant bears the burden of proof during steps one through four.  At step five, the burden shifts to the Commissioner.  *Id.*  If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps.  Step one asks whether the claimant is presently engaged in "substantial gainful activity."  20 C.F.R. §§ 404.1520(b), 416.920(b).[3]  If she is, disability benefits are denied.  If she is not, the Commissioner proceeds to step two.  At step two, the claimant must establish that she has one or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities.  If the claimant does not have such impairments, she is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations.  20 C.F.R. §§ 404.1520(d), 416.920(d).  A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled.  *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed

---

[3] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit.  20 C.F.R. § 404.1572.

REPORT AND RECOMMENDATION - 4

in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e), 416.920(e).  Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether she can still perform that work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If the claimant is able to perform her past relevant work, she is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100.  If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

V.     DECISION BELOW

On June 22, 2011, the ALJ found:

1.     The claimant meets the insured status requirements of the Social Security Act through December 31, 2008.

2.     The claimant has not engaged in substantial gainful activity since August 11, 2008, the alleged onset date.

3.     The claimant's asthma and restless leg syndrome are severe impairments.

4.     The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5.     The claimant has the residual functional capacity to perform less than the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b).  The claimant needs to avoid excess fumes or dust.  She has asthma attacks that are incapacitating for 30 to 60 minutes with a frequency of two or three a month.  The claimant has significant limitations in fine manipulation using her dominant hand.  She is from Vietnam and has difficulty understanding complex English.

6.     The claimant is unable to perform any past relevant work.

REPORT AND RECOMMENDATION - 5

7. The claimant was born on XXXXX, 1972 and was 36 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.[4]

8. The claimant has a high school education and is able to communicate in English (with the limitations noted in her residual functional capacity, as found above).

9. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from August 11, 2008, through the date of this decision.

AR at 15-20.

## VI.    ISSUES ON APPEAL

The principal issues on appeal are:

1. Whether the ALJ erred because his residual functional capacity ("RFC") assessment and hypothetical to the vocational expert ("VE") failed to include all limitations credited by the ALJ;

2. Plaintiff's asthma met or equaled Listing 3.03;

3. Whether the ALJ's RFC assessment accounted for all of the limitations caused by Plaintiff's restless leg syndrome ("RLS") and asthma.

Dkt. 14 at 1-2.

## VII.    DISCUSSION

A.    The ALJ Erred in Omitting Credited Limitations from his RFC Assessment and VE Hypothetical.

Plaintiff argues that the ALJ's step-five findings are not supported by substantial evidence because the hypothetical posed to the vocational expert ("VE") and the RFC assessment do not account for limitations found in the opinions of Arthur Ginsberg, M.D., and

---

[4] The actual date is deleted in accordance with Local Rule CR 5.2, W.D. Washington.

REPORT AND RECOMMENDATION - 6

Robert Hoskins, M.D., which were credited by the ALJ.

Dr. Ginsberg performed a consultative examination after the administrative hearing, because the ALJ found that he needed more information regarding Plaintiff's tendonitis and any other neurological issues. *See* AR at 77, 679-85. Dr. Ginsberg examined Plaintiff and opined that she "cannot perform a job that requires repetitive use or heavy lifting or carrying with the right upper extremity." AR at 684. The ALJ gave "great weight" to Dr. Ginsberg's opinion and accurately summarized Dr. Ginsberg's opinion in the decision (AR at 18), but the question posed to the VE at the administrative hearing — before Dr. Ginsberg had evaluated Plaintiff — was formulated without the benefit of Dr. Ginsberg's opinion. The ALJ asked the VE to assume that a hypothetical claimant had "significant limits in – fine manipulation with her [right] hand," but he did not mention a limitation on repetitive use; he specifically indicated that Plaintiff "has no limits in gross manipulation." AR at 74. Those same limitations were included in the written RFC assessment. AR at 17. According to Plaintiff, the ALJ's reference to "significant limits" in "fine manipulation" in the RFC assessment and VE hypothetical does not adequately capture the limitation identified by Dr. Ginsberg and endorsed by the ALJ, and thus the RFC assessment is flawed and the step-five findings are erroneous.

The Court agrees. A "significant" limitation on fine manipulation is (1) vague for purposes of a VE hypothetical, because "significant" is not defined in the Dictionary of Occupational Titles; and (2) not coterminous with a limitation on repetitive use. Manipulation involves actions of reaching, handling, fingering, and feeling, and whether such action requires fine manipulation or gross manipulation does not indicate whether the action is repetitive. *See* Social Security Ruling ("SSR") 85-15, 1985 WL 56857, at *7 (Jan. 1, 1985) (explaining manipulative limitations). The lack of consistency between the ALJ's hypothetical and Dr. Ginsberg's opinion is understandable, given that the ALJ did not have the benefit of Dr.

Ginsberg's opinion at the time he formulated the VE hypothetical, but it nonetheless leaves the ALJ's step-five findings in error.[5] *See Lewis v. Apfel*, 236 F.3d 503, 517-18 (9th Cir. 2001) ("Hypothetical questions asked of the vocational expert must 'set out all of the claimant's impairments.' If the record does not support the assumptions in the hypothetical, the vocational expert's opinion has no evidentiary value.") (quoting *Gamer v. Sec'y of Health and Human Servs.*, 815 F.2d 1275, 1278, 1279 (9th Cir. 1987)). On remand, the ALJ shall reconsider his RFC assessment and VE hypothetical in light of the specific restrictions identified in Dr. Ginsberg's opinion.

The ALJ shall also reconsider his RFC assessment and VE hypothetical in light of another restriction that he purported to credit and account for: a restriction on concentrated exposure to hazards (machinery, heights, etc.). This restriction was included in the opinion of Robert Hoskins, M.D., a State agency medical consultant, and the ALJ assigned "significant weight" to this opinion and also explicitly referenced the hazards restriction in his decision, asserting that his RFC assessment accounts for that restriction. AR at 18 (citing AR at 585). The RFC assessment, however, makes no reference to a hazards restriction, and neither does the VE hypothetical. AR at 17, 71-77.[6] On remand, the ALJ shall reconsider his RFC assessment and VE hypothetical in light of the hazards restriction identified in Dr. Hoskins's opinion.

//

[5] Though the Commissioner argues that certain factors render Dr. Ginsberg's opinion less reliable (Dkt. 15 at 11), this argument is inapposite because the ALJ explicitly assigned "great weight" to Dr. Ginsberg's opinion and asserted that his hypothetical question accounted for Dr. Ginsberg's opinion. AR at 18. The Commissioner's attempt to inject post hoc rationalization would be improper in any event, but it is particularly unpersuasive in light of the ALJ's explicit findings.

[6] The Commissioner's brief does not address this restriction or respond to the Plaintiff's argument regarding it.

REPORT AND RECOMMENDATION - 8

B.      The ALJ Did Not Err at Step Three.

Plaintiff argues that the ALJ should have found that she met or equaled the Listing 3.03(b) criteria for her asthma.  The Listing 3.03(b) criteria requires attacks that occur at least once every two months or at least six times a year despite prescribed treatment and requiring physician intervention.  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 3.03(b).  Listing 3.03(b) relies on this definition of "attack" found in another regulation:

> Prolonged symptomatic episodes lasting one or more days and requiring intensive treatment, such as intravenous bronchodilator or antibiotic administration or prolonged inhalational bronchodilator therapy in a hospital, emergency room or equivalent setting.  Hospital admissions are defined as inpatient hospitalizations for longer than 24 hours.  The medical evidence must also include information documenting adherence to a prescribed regimen of treatment as well as a description of physical signs.  For asthma, the medical evidence should include spirometric results obtained between attacks that document the presence of baseline airflow obstruction.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 3.00(C).  The ALJ found that because Plaintiff's asthma attacks were less frequent than required by the Listing, she did not meet or equal the Listing. AR at 16.

Plaintiff has not established that the ALJ's step-three finding was erroneous.  Plaintiff has pointed to evidence of medical visits wherein she complained of asthma exacerbations and/or wheezing (Dkt. 14 at 10-11 (citing AR at 263-67, 270-71, 273-74, 400-03, 482-84, 493, 569, 594-96, 617-19, 632-34, 654)), but none of these episodes were treated with the type of "intensive treatment" contemplated by Listing 3.00(C).  Plaintiff's providers either prescribed additional medication, or treated her symptoms with a nebulizer, and that type of treatment does not rise to the severity required by the Listing.  As the ALJ noted in his step-three findings, Plaintiff's "asthma has consistently been described by her treating medical source as moderate persistent asthma[.]"  AR at 16 (citing AR at 589, 591, 662, 664, 666, 670, 673-74). Plaintiff has not pointed to evidence establishing that her "moderate persistent asthma" meets

REPORT AND RECOMMENDATION - 9

1    or equals the severity of the Listing 3.03 criteria, and thus the ALJ's step-three findings should

2    be affirmed.

3    C.    The ALJ's RFC Assessment Adequately Accounts for Plaintiff's RLS and Asthma.

4        *1. Limitations Caused by RLS*

5        The ALJ found Plaintiff's RLS to be a severe impairment at step two[7] (AR at 15), but

6    explained that any functional limitation caused by RLS overlapped with the limitations caused

7    by asthma accounted for in the RFC assessment.  AR at 16.  Plaintiff argues that the ALJ erred

8    by overlooking her treating physician's April 2011 opinion that her fatigue (whether caused by

9    RLS or other impairments) would cause her to be "off task 20% or more of the time and that

10   she would be absent three or more times a month" (Dkt. 16 at 10 (citing AR at 691-92)) and

11   did not specifically reject her own testimony about the limiting effects of fatigue.

12        Plaintiff's arguments are not well-founded.  The ALJ in fact specifically addressed the

13   April 2011 opinion of treating physician Rebecca Benko, M.D., regarding the effect of

14   Plaintiff's fatigue, explaining that he assigned it "limited weight" because it was not supported

15   by her treatment notes.  AR at 18.  Indeed, Dr. Benko's few references to RLS contain no

16   indication that Plaintiff complained of daytime fatigue as a result of that condition, and

17   Plaintiff rarely reported fatigue overall.  *See* AR at 511 (note indicating that Plaintiff reported

18   that her "excessive daytime somnolence and fatigability is better"), 526-28 (note attributing

19   Plaintiff's fatigue to hypothyroidism (and indicating a new course of hypothyroid treatment),

20   and recording that she was "doing well" on RLS treatment), 664 (note recorded Plaintiff's

21   report that RLS did not cause "discomfort during the day").  Thus, the ALJ's reason for

22   _____

23        [7] That Plaintiff devotes any briefing to arguing that the ALJ erred in finding that her
     "RLS was so insignificant that it did not even meet the threshold severity standard in Social
24   Security cases" is curious, given that the ALJ did identify RLS as a severe impairment at step
     two.  *Compare* Dkt. 16 at 9 *with* AR at 15-16.

REPORT AND RECOMMENDATION - 10

1   discounting Dr. Benko's opinion is specific and legitimate, and supported by substantial

2   evidence in the record.  *See Thomas*, 278 F.3d at 957 ("The ALJ need not accept the opinion of

3   any physician, including a treating physician, if that opinion is brief, conclusory, and

4   inadequately supported by clinical findings.").

5          Furthermore, the ALJ did explain why he discounted the credibility of Plaintiff's

6   testimony.  AR at 17.  Though Plaintiff suggests that the ALJ erred in failing to specifically

7   reject Plaintiff's testimony pertaining to fatigue (Dkt. 16 at 10), she identifies no authority

8   requiring an ALJ to specifically assess the credibility of each and every statement made by a

9   claimant.  The ALJ discounted the Plaintiff's testimony regarding the intensity, persistence and

10  limiting effects of her symptoms to the extent that it was inconsistent with the RFC assessment,

11  and provided reasons for doing so.  AR at 17.  *See also Turner v. Comm'r of Social Sec.*

12  *Admin.*, 613 F.3d 1217, 1224-25 (9th Cir. 2010) (affirming an ALJ's finding that a claimant's

13  testimony regarding mental symptoms lacked credibility in light of discrepancies in his

14  testimony regarding physical limitations).  Thus, the ALJ adequately explained his reasons for

15  discounting Plaintiff's testimony regarding limitations caused by RLS.

16          2.  *Limitations Caused by Asthma*

17          Plaintiff also argues that the ALJ failed to fully account for limitations caused by her

18  asthma.  To the extent that Plaintiff assigns error to the ALJ's adverse credibility determination

19  (Dkt. 14 at 14-17), in arguing that the ALJ improperly failed to include more severe limitations

20  caused by her asthma in his RFC assessment, her arguments fail.  She identifies parts of her

21  testimony that she contends contradict the ALJ's finding that her daily activities are

22  inconsistent with her allegations, but does not show that the ALJ's finding is unreasonable or

23  unsupported by substantial evidence.  Plaintiff has therefore not established error in the ALJ's

24  adverse credibility finding.  *Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 599 (9th

Cir. 1999) ("Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.")

Furthermore, the ALJ explained why he assigned limited weight to Dr. Benko's opinions regarding Plaintiff's limitations caused by asthma. He cited a lack of support for severe limitations in Dr. Benko's own treatment notes, as well as a direct contradiction contained in her notes: on January 28, 2011, Dr. Benko reported that Plaintiff's asthma was well-controlled by medication. *See* AR at 18 (citing AR at 664). Plaintiff has not identified any portion of Dr. Benko's treatment notes that support her opinions regarding limitations; she directs the Court's attention to the opinions themselves, but has not shown that the ALJ erred in finding that Dr. Benko's treatment notes do not corroborate her opinions indicating severe impairment and instead indicate that Plaintiff's asthma was only moderate. *See* AR at 589, 591, 662, 664, 666, 670, 673-74 (treatment notes referring to Plaintiff's asthma as "moderate"). Because the ALJ reasonably concluded that Dr. Benko's opinions regarding Plaintiff's more severe limitations caused by asthma were not supported by her treatment notes, the ALJ was entitled to discount those opinions. *See Thomas*, 278 F.3d at 957. Accordingly, Plaintiff has not established that the ALJ improperly rejected evidence of more severe limitations caused by asthma.

## VIII.   CONCLUSION

For the foregoing reasons, the Court recommends that this case be REVERSED and REMANDED to the Commissioner for further proceedings not inconsistent with the Court's

//

//

//

//

REPORT AND RECOMMENDATION - 12

1    instructions.  A proposed order accompanies this Report and Recommendation.

2         DATED this 21st day of May, 2013.

3

4         _____
          JAMES P. DONOHUE
5         United States Magistrate Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

REPORT AND RECOMMENDATION - 13